MARTIN L. MAIN AND WILLIAM A. MCKELLIP, Garnishees of ELIJAH WAGONER *vs.* EDWARD LYNCH.

*Rules of Court cannot take away a right positively secured by law—Right of sheriff to Amend his return, a common law right, not dependent upon sec. 23, of Art. 75 of the Code— This right applies to Attachment cases— When such Amendment may be made; and of what it is Evidence— Assignment for benefit of Creditors, Void if made with Fraudulent intent, even though regular on its face and duly recorded—What acts of Fraud may be considered by the jury—Admissibility in Evidence of acts subsequent to the deed—Conspiracy to defraud.*

The rules of Court which are given the force of law until wholly rescinded, are such rules as a Court has the power to pass; for a Court cannot pass a rule which takes away from a party litigant a right positively secured by law.

The right of the sheriff to amend his return so as to make it conform to the truth, whatever that may be, and the right of parties interested, to have him amend his return, is a common law right, and in no way dependent upon the provisions of Art. 75, sec. 23, of the Code of Public General Laws.

The fact that it is an attachment proceeding, does not affect the right to amend the return to the writ.

Main and McKellip, Garn. *vs.* Lynch.

In cases of this character, the sheriff may amend his return, and the parties are entitled to have him do it, at any time during the trial, and before the jury retire, so as to make it conform to the fact, and certify all that it was his duty to certify, unless the rights of third parties had meanwhile attached, which would render it unreasonable to permit it.

A rule of Court provided as follows : " When a plaintiff or defendant has closed his case on the testimony, and a prayer shall be offered the Court upon such testimony, he shall not offer any additional evidence on the subject to which the prayer refers, or with regard to the case in any particular." On the trial of an attachment case after the evidence was closed, and certain prayers had been offered, the plaintiff moved for leave to the sheriff to amend his return, by stating that he had set up a copy of the short note at the court-house door on the day of the delivery to him of the attachment, and offered to prove the delivery to the sheriff of such short note, and that he did on the day of the delivery of the attachment to him, set it up at the court-house door. HELD:

1st. That said rule of Court, even if so intended, being the mere creature of the Court, could not deprive the parties to the cause of a right which the law guaranteed to them, and would interpose no bar to the Court's permitting the amendment to be made, when, and as it was made.

2nd. That said rule was not intended to exclude such evidence as comes to the Court and jury from the necessary proceedings in a cause.

3rd. That the return as amended was evidence of the fact that a copy was set up, and ought to have gone to the jury, notwithstanding said rule, and if any other evidence of that fact was admitted which was inconsistent with the rule, it was surplusage, and the garnishees were not injured by its admission.

A deed, though purporting to be an assignment for the benefit of the creditors of the assignor, is void if executed by the assignor in pursuance of an intent to defraud his creditors, and as a means of covering up the assignment, disposition and concealment of his property, or some portion thereof, and may by its terms operate in aid of the fraudulent intent.

The fact of the deed being regular on its face, and duly recorded, does not prevent its being affected by the fraudulent acts of the grantor.

It is not necessary that the creditors be actually defrauded by the deed. The Statute makes the *intent* to defraud, sufficient to overthrow it, if the intent be found to have entered into the making of the deed.

Acts conceded to be fraudulent, should not be declared by the Court insufficient to establish a fraudulent intent in the execution of the deed, if they were acts which the jury were bound to consider and might act on.

Where the assignor had confessed a judgment in favor of M., one of the assignees, six days before the execution of the deed; and there was proof tending to connect M. with the assignor in the fraudulent disposition of his property, the fact that this judgment was confessed to the assignee at that juncture, is a proper circumstance to go to the jury in an action in which the deed is impeached.

Evidence having gone to the jury tending to show M's knowledge of the assignor's fraudulent purposes, and tending to show participation by him in the fraudulent acts anterior to the execution of the deed, it was HELD:

1st. That his acts after the deed was executed formed a proper subject of evidence, and consideration by the jury in determining the question of fraud.

2nd. That if M. was in conspiracy with the assignor, and the jury so found, then they were pursuing a common object, and the acts of M. were also the acts of the assignor, and could not be excluded, or denied their proper weight in making up a verdict.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff prayed the Court to instruct the jury as follows:

1. That if the jury find from all the evidence, that at the time of the attachment issued in this case, Elijah Wagoner was *bona fide* indebted to the plaintiff in the sum of $512.35, over and above all discounts, and that he was so indebted to the plaintiff before and at the time of

the execution of the deed of trust given in evidence; and shall further find that at said time said Wagoner was largely indebted to other persons, and that before said attachment issued, the said Wagoner had assigned, disposed of or concealed his property, or some portion thereof, with the intent to defraud his creditors; and shall further find, that the deed of trust in evidence by the garnishees, was executed by said Wagoner in pursuance of his said fraudulent intent, and for the purpose and as a means of covering up the said assignment, disposition or concealment of his said property, or some portion thereof, with intent to defraud his creditors, and that the said deed might, by its terms or provisions, operate as an instrument in aid of the said fraudulent intent, by reason of Martin L. Main being made therein one of the trustees, and that he was made a trustee therein with that intent and for that purpose, (although the jury should believe that Wm. A. McKellip, the other trustee named in said deed, did not participate in said fraud or fraudulent intent, and was wholly innocent thereof,) if the jury so find; and if the jury further find from all said evidence, that the goods and chattels mentioned in the return of the sheriff to the writ of attachment in this case, were the property of said Wagoner at the time of execution of said deed, and that the garnishees, McKellip and Main, had no right or title to said goods and chattels or any part thereof, except under and by virtue of said deed; and if the jury shall further find, that at the time of the issuing and laying said attachment in the hands of said garnishees, or at this time, they, the said garnishees, had in their hands, as proceeds of sales by them of goods and chattels of said Wagoner, made by them, under and by virtue of said deed of trust, or as proceeds of collections of debts due to said Wagoner, made by them, under and in pursuance of said deed of trust, a larger sum of money than the claim or debt of the plaintiff, set out in said writ of attachment, the plaintiff is entitled to a verdict on all the issues in the case.

2. That if the jury believe from all the evidence, that on the 5th day of October, 1878, the said Elijah Wagoner was indebted to the plaintiff, and also to divers other persons in large sums of money; and shall further believe from all the said evidence, that on the 7th day of the same month, the said Wagoner executed the deed of trust given in evidence, with intent to hinder, delay and defraud his creditors of their just and lawful actions, suits, debts, accounts, damages, &c., the said deed is void.

3. That if the jury find from all the evidence the facts set forth in the aforegoing second prayer, and shall further find, that the goods and chattels mentioned in the sheriff's return to said writ of attachment in this case, were the goods and chattels of said Wagoner, at the time when said deed of trust was executed and delivered; and that William A. McKellip and Martin L. Main, have not had, at any time, other claim of, title to said goods and chattels than, or except under and by virtue of said deed of trust; and if the jury shall further find, at the time of the attachment issued and laid in their hands, or, at the time of the trial of this cause, the said McKellip and Main had in their hands a larger sum of money than the claim or debt of the plaintiff set forth in the said writ of attachment, and which was the proceeds of sales by them of the goods and chattels of said Wagoner at the date of the execution of said deed of trust, if the jury so find, or the proceeds of collections made by them of debts due to said Wagoner at said date of execution of said deed, if the jury so find, then the plaintiff is entitled to a verdict under the second and third pleas in this case, and each and both of said pleas.

4. That the deed of trust given in evidence in this case is void, and cannot be considered by the jury as evidence of title of garnishees to the goods and chattels or rights or credits in this case.

And the garnishees offered the eleven following prayers:

1. That if the jury find from the evidence that the goods and chattels, rights and credits, attached in this case prior to and on the 7th day of October, 1878, belonged to Elijah Wagoner, and that he, on the 7th day of October, 1878, executed, acknowledged and delivered the deed given in evidence, and that the same was recorded on the day of its execution, and shall further find that said garnishees, on the 8th day of October, 1878, executed the bond offered in evidence as trustees of said Wagoner under said deed, and that said bond was duly approved, that then said deed is a valid deed to transfer all of said property, rights and credits to William A. McKellip and Martin L. Main for the benefit of the creditors of said Wagoner, and they must find for the garnishees.

2. If the jury shall find the facts contained in the first prayer, and shall further find that within a day or two after the execution of said deed, the said William A. McKellip and Martin L. Main took charge of the said property, and had the same in their possession and charge when the attachment in this case was issued, then they must find for the garnishees.

3. That before the jury can find for the plaintiff, they must find that said Wagoner executed the deed given in evidence, with the view, purpose and intent to delay, hinder or defraud his creditors by the execution of the same, and further that the said deed was actually the instrument to defraud his creditors, or it does not hinder, delay or defraud his creditors and is valid, and their verdict must be for the garnishees.

4. That even though the jury should find that Elijah Wagoner, prior to the execution of the deed and in contemplation thereof, sold large quantities of machinery and other goods under cost price thereof, with the view of appropriating the proceeds of sales to his own use, still such evidence is not alone sufficient to condemn the said deed

as fraudulent and void against his creditors, unless they further find that said deed was intended to delay, hinder or defraud his creditors, and was capable of effectuating and aiding said Wagoner in his intent to hinder and defeat his creditors.

5. That the question of fraud or want of consideration in the judgment given by Elijah Wagoner to Martin L. Main, and given in evidence on the 1st day of October, 1878, is not to be considered by the jury in passing on any of the issues in this case.

6. That though the jury may find that Elijah Wagoner did not deliver to his trustees all his property, or convey the same to them under or by said deed, yet this is not alone sufficient to warrant the jury in finding that the same was executed for the purpose of hindering, delaying or defrauding his creditors.

7. That fraud is not to be presumed, though it is not necessary to be proved by direct and positive testimony, yet the circumstances upon which the presumption, if its existence is founded, should lead plainly and directly and by strong implication to that conclusion.

8. That if the jury find from the evidence, that the goods and chattels, rights and credits attached in this cause, as of the goods and chattels, rights and credits of Elijah Wagoner were, prior to, and on the 7th day of October, 1878, the goods and chattels, rights and credits of the said Wagoner, and that on the 7th day of October, 1878, the said Wagoner and his wife executed and acknowledged and delivered to the garnishees the deed of trust offered in evidence, and that said deed was duly recorded, and that the trustees therein and thereunder executed the bond offered in evidence, for the discharge of their trust; and that said trustees took possession within a day or two after the execution of said deed of trust of the property and effects of said Wagoner, conveyed to them under said deed of trust, then said deed is

a valid deed to transfer all the property and estate of the said Wagoner to said trustees for the purposes therein mentioned; and that the verdict of the jury must be for the garnishees, unless they find that the said Elijah Wagoner executed said deed of trust to hinder and delay, cheat or defraud his creditors by the execution of said deed, and that said deed, at the time of its execution, was intended by the said Wagoner to operate, and was by its terms or provisions, capable of operating as an instrument in aid of the fraud.

9. That if the jury find, that all the transactions testified to before the execution, acknowledgment and delivery of the deed of trust offered in evidence of the said Elijah Wagoner, were fraudulent and void as to his creditors, their verdict must be for the garnishees under said deed of trust offered in evidence, unless they find from the evidence, that the said Wagoner intended, by said deed, to defraud his creditors, and that said deed was actually the instrument to defraud them, and was, by its terms, capable of effectuating said fraud.

10. That the jury are not at liberty to consider any acts or doings of the trustees under the deed of trust offered in evidence after the execution of said deed, in determining the interest with which said deed was executed by said Wagoner, even though they may find that the said acts and doings, or any of them, of said trustees, or either of them were improper, wrongful or fraudulent.

11. That the verdict of the jury must be, under the pleadings and evidence in this cause, for the garnishees, unless they find from the evidence that a copy of the short note in the cause was set up with the writ at the court-house door by the sheriff, and that there is no evidence of such fact.

Whereupon the plaintiff moved the Court for leave to the sheriff to amend his return by stating that he had set up a copy of the short note at the court-house door,

on the day of the delivery to him of the said writ of attachment; and offered to prove that the sheriff had in fact received from the clerk a copy of the short note in this case with the writ of attachment, and set up the said copy of said short note at the court-house door on the day of the said delivery to him thereof; and that the omission of said statement in his return was an inadvertent omission. The garnishees objected thereto, but the Court, (HAYDEN, J.,) overruled the objection and received the said proof, and granted leave to the sheriff to amend his return, and the sheriff amended his said return accordingly. The garnishees excepted.

*Second Exception.*—The garnishees then offered the two following additional prayers:

12. That if the jury find that the plaintiff and garnishees had respectively closed their testimony in this cause, and had severally offered prayers to the Court, and that after the case had closed, and all the witnesses had been examined, on each side, and, after prayers had been offered on each side to the Court, the plaintiff asked leave of the Court for the sheriff to amend his return to the writ in this cause, and that said motion was granted by the Court, against the objection of the garnishees, and that thereupon the sheriff made the following amendment to his original return, to wit: "And copy of short note set up at the court-house door," that still their verdict must be for the garnishees, because said amended return has not been proved to the jury or offered in evidence, and because it is not competent for the plaintiff to offer said amended return in evidence under the twenty-eighth rule of this Court as follows:

"That in the trial of cases in this Court, when a plaintiff or defendant has closed his case on the testimony, and a prayer shall be offered to the Court upon such testimony, he shall not offer any additional evidence on the subject to which the prayer refers, or with regard to the case in any particular."

13. That the verdict of the jury must be for the garnishees under all the pleadings and evidence in this cause.

The Court granted the plaintiff's first prayer, and the garnishees' seventh and eighth prayers, and rejected all the rest of the prayers of the plaintiff and garnishees. The garnishees excepted, and, the verdict and judgment being against them, appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J., for the appellee, and submitted on brief for the appellants.

*James A. C. Bond* and *John E. Smith*, for the appellants.

*William P. Maulsby*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The questions involved in this appeal grew out of an attachment sued out of the Circuit Court for Carroll County by the appellee against Elijah Wagoner, and which was laid in the hands of the appellants as garnishees. It is a proceeding under the Act of 1864, ch. 306, and the affidavit, as that law requires, set out that the defendant had assigned, disposed of, or concealed his property, or some portion thereof, with intent to defraud his creditors, or was about to do so. The attachment having been laid in the hands of the appellants as garnishees, they appeared and filed their pleas, viz., one on the behalf of the debtor denying the fraudulent assignment or disposition of his property to defraud his creditors, and two on their own behalf, putting in issue the fact whether they had any goods or property of the debtor, and whether the specific property attached was the debtor's property, the garnishees claiming it as belonging to them.

Issue was joined and all errors of pleading were waived. The only questions for our decision arise on the

rulings of the Circuit Court at the trial. After all the evidence was in and sundry prayers had been offered to the Court, including one directing the jury "that unless they found that a copy of the short note in the cause was set up with the writ at the court-house door by the sheriff," they must find for the defendants, "and that there was no evidence of such fact," the plaintiff moved for leave to the sheriff to amend his return by stating that he had set up a copy of the short note at the court-house door, on the day of the delivery to him of the attachment, and offered to prove the delivery to the sheriff of such short note, and that he did on the day of the delivery of the attachment to him set it up at the court-house door. This motion was opposed by the defendants because of the twenty-eighth rule of that Court which is as follows: "When a plaintiff or defendant has closed his case on the testimony, and a prayer shall be offered to the Court upon such testimony, he shall not offer any additional evidence on the subject to which the prayer refers or with regard to the case in any particular ;" but the Court permitted the amendment and received the proof offered. It is the ruling of the Court on this motion which forms the ground of the first exception. "This Court has always regarded a *legitimate* rule of the Court as prescribing a law to the Court." *Dunbar vs. Conway,* 11 *G. & J.,* 97 ; and in *Wall vs. Wall,* 2 *H. & G.,* 82, and *Gist and Scott, Adm'rs of Gist vs. Drakely,* 2 *Gill,* 346, this Court has said there exists no discretion in an inferior Court to dispense with its own rules, or innovate on the established practice. The rules of Court which are, by the decisions referred to, given the force of law, until wholly rescinded, are such rules as a Court has the power to pass ; for a Court cannot pass a rule which takes away from a party litigant a right positively secured by law. *Union Bank of Maryland vs. Ridgely,* 1 *H. & G.,* 407. In the case of *Berry vs. Griffith,* 2 *H. & G.,* 343, this Court said the sheriff has

a right in due time to correct his return, so as to make it conform to the truth whatever that may be; and that it is his duty to do so, not only as respects himself but all concerned. The right of the sheriff to amend his return, and the right of parties interested to have him amend his return, is a common law right, and is in no way dependent upon the provisions of Art. 75, sec. 23, of the Code of Public General Laws. The fact that it is a writ of attachment, does not affect the right to amend the return to the writ. In *Boyd, et al. vs. Chesapeake & Ohio Canal Co.,* 17 *Md.,* 209, it is so expressly decided. It is true that in that case the amendment allowed was within the Term to which the process was returnable; but in our opinion in cases of this character, the sheriff may amend his return, and the parties are entitled to have him do it, at any time during the trial and before the jury retire, so as to make it conform to the fact, and certify all that it was his duty to certify, unless perchance the rights of third parties had meanwhile attached which would render it unreasonable to permit it.

He is answerable for neglect of duty as well as for a false return, and if he has neglected to make a proper return, or has by inadvertence, made a return which is untruthful, justice to him has always allowed the error to be corrected within a *reasonable time,* by amending his return. By uniform practice in cases on trial, it has been held to be *within reasonable time* for it to be done before his mistake had resulted in irretrievable damage to litigants, that is to say, at any time before the case was finally given to the jury and they had retired. Conceding therefore the rule in question to have been intended to reach so far as the appellants contend, we would be compelled to hold, that the rule, being the mere creature of the Court, could not deprive the parties to the cause of a right which the law guaranteed to them, and would interpose no bar to the Court's permitting the amendment to

be made, when, and as it was made. But in our opinion the rule in question was not intended to exclude such evidence as comes to the Court and jury from the necessary proceedings in a cause. It certainly could not have been so intended, and ought not to be so construed, and that the Court in which it prevails do not so understand it, appears from their ruling, the exception to which we are now considering. The sitting up of a copy of the short note at the court-house door is a part of the special proceeding necessary to support a judgment on attachment. The return of the sheriff is also a necessary part of the proceeding. From it the Court gets *prima facie* evidence that all that the sheriff was required to do was done by him. All intendments are made in favor of the officer, and especially that his return is truthful in the facts which it asserts. If it could be shown affirmatively that the short note was not set up, the proceedings would, on motion, be quashed; which, in fact, was the proper mode of raising the question. The return, as amended, was evidence of the fact, that a copy was set up, and ought to have gone to the jury, notwithstanding the rule relied on; and if any other evidence touching the matter was admitted, which was inconsistent with the rule, it was superfluous, and the appellants were not injured by its admission. We find no error in the ruling embodied in the first exception.

The second exception relates wholly to the prayers granted and rejected. From the record it appears, that Wagoner, the defendant in the attachment, was a manufacturer of and a dealer in agricultural implements, purchasing and selling large quantities thereof, and that he was also a dealer in sewing machines, which he bought of the manufacturers and sold in large quantities. Being in debt to the manufacturers for machines and implements to the extent of twenty thousand dollars and more, for purchases during the year 1878, which he had bought

and sold, on the 7th day of October, 1878, he made an assignment for the benefit of his creditors to the garnishees, who are the appellants. Under this deed of assignment, the appellants claim title, and protection from the attachment. The appellee, the plaintiff in the attachment, attacked this deed as fraudulent, claiming it to be one of sundry acts of the grantor by which he was assigning, concealing and disposing of his property with intent to defraud his creditors. Evidence of various doings and acts of the grantor, and Martin L. Main (one of the appellants) as his agent, was given to the jury and certified in the record from which a jury might find that the defendant, Wagoner, had been disposing of and secreting his property to defraud his creditors; and that the garnishee, Main, was cognizant of his fraudulent acts and aided him in them, and that the deed of assignment was also executed in furtherance of his fraudulent purpose.

The plaintiff's prayer, to the granting of which the appellants excepted, substantially told the jury that if they found the defendant Wagoner indebted to the plaintiff as alleged, and that he was largely indebted to other persons, and that being so indebted he had assigned, disposed of or concealed his property, or some portion thereof, with intent to defraud his creditors, and that the deed of trust to the garnishees was executed by the defendant Wagoner in pursuance of his fraudulent intent and purpose, and as a means of covering up the assignment, disposition and concealment of his property, or some portion thereof, with intent to defraud his creditors, and that the deed might, by its terms, operate in aid of the fraudulent intent; and that the garnishees had property, or the proceeds thereof, which came to them by virtue of the deed of assignment, then the verdict should be for the plaintiff on all the issues in the cause.

So far as objection appears to have been made to this instruction, we can see no error in granting it. Assuming

that there was evidence tending to support all the facts which the prayer put to the jury to find, as we must, from all that appears in the record, we think that the prayer properly laid down the law applicable to the case. The question which it raises is not a new one, but has been the subject of express decision in this Court.

In *Foley, c. t. a. vs. Bitter*, 34 *Md.*, 653, the deed which was assailed as fraudulently intended to delay, hinder, and defraud the creditors of the grantor was an assignment professedly for the benefit of his creditors..

In that case the Court held that the evidence established the fact that the grantors were engaged in secreting property which did not go, and was not intended to go, into the hands of the trustees, and the Court said it was well settled, "as well upon reason and authority, as upon the words of the Statute, that if the assignment be made with the fraudulent intent to delay, hinder, or defraud creditors, and at the time of its execution be intended to be, and by its terms may operate as, an instrument in aid of the fraud, then it falls 'within the words as well as the mischief of the Statute,' and is void as fraudulent in fact." The prayer under consideration, whether considered with reference to the Statute of 13th Elizabeth or the Act of 1864, properly presents to the jury the facts which they are to find to justify a verdict for the plaintiff.

The first and second prayers of the appellants were properly rejected. They proceed upon the theory that the deed being regular on its face and duly recorded, it was not to be affected by the fraudulent acts of the grantor, and wholly excludes the evidence of fraudulent intent, which, the Statute declares, shall avoid it, if found to exist.

The third and ninth prayers of the appellants required the jury to be told that they must find that the deed not only was capable of defrauding the creditors, but did actually defraud them. There was no such issue before

the jury. The Statute makes the *intent* to defraud suffi-
cient to overthrow the deed, if the intent be found to have
prompted or entered into the making of the deed; and has
been fully discussed in disposing of the plaintiff's first
prayer.

The fourth and sixth prayers of the appellants undertake
to declare the insufficiency of certain acts conceded to be
fraudulent to establish a fraudulent intent in the execu-
tion of the deed. They were acts which the jury were
bound to consider and might act on, and the prayers were
correctly refused.

The fifth prayer proposed to exclude from the jury the
consideration of a certain judgment of Martin L. Main
against Wagoner, and confessed by Wagoner on the first
day of October, 1878, only six days before the execution of
the deed. The rejection of this prayer was clearly right.
The evidence had been allowed to go without exception
so far as the record shows. There was proof tending to
connect Main with Wagoner in the fraudulent disposition
of his property, and the fact that this judgment was con-
fessed to him by Wagoner at that juncture, was a very
proper circumstance to go to the jury, under the circum-
stances surrounding the case, and the prayer was there-
fore calculated to mislead, and was properly rejected.

The tenth prayer of the appellants was intended to take
from the jury the consideration of the acts of Main, one of
the grantees in the deed and one of the garnishees, after
the deed was executed, as not tending to throw any light
on the intentions of the grantor in making the deed.

Evidence had gone to the jury tending to show Main's
knowledge of Wagoner's fraudulent purposes, and tending
to show participation by him in the fraudulent acts ante-
rior to the execution of the deed. His acts afterwards,
therefore, formed an eminently proper subject of evidence
and consideration by the jury in determining the question
submitted to them. If Main was in conspiracy with

Wagoner, and the jury so found, then they were pursuing a common object; and the acts of Main were also the acts of Wagoner, and could not be excluded, or denied their proper weight in making up a verdict.

The proposition contained in the eleventh and twelfth prayers of the garnishees is disposed of in our decision on the first exception, and requires no further comment.

The thirteenth prayer of the appellants, which asked that the jury be instructed "that under all the pleadings and evidence in the case their verdict should be for the garnishees," was wholly inconsistent with the theory of the plaintiff's prayer, which we have said was correctly granted. Finding no error, the judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided 18th November, 1880.)