600 A.2d 1204

**Grover N. SENSABAUGH**

v.

**Jean GORDAY.**

**No. 595, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Feb. 5, 1992.

Brian M. Bowersox, Asst. County Atty. for Carroll County (Charles W. Thompson, Jr., County Atty. for Carroll County, on the brief), Westminster, for appellant.

Alan Meiselman (Neal J. Meiselman, Linda Haspel, Gwendolen C. Lesh and Haspel & Meiselman, Chartered on the brief), Rockville, for appellee.

Argued before FISCHER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

This appeal contests a master's authority or jurisdiction to conduct a contempt proceeding which would result in a recommendation of contempt to the circuit court and a subsequent acceptance of that recommendation without another hearing before the circuit court. As we interpret former Maryland Rule 2–541(g)(3), we hold that it does not

require the circuit court to conduct another hearing [1] before finding an individual in contempt of court based on a master's recommendation.[2] We therefore affirm the decision of the lower court.

### The Facts

The appellee, Jean Gorday, filed a petition to modify a divorce decree and to increase child support. The summons, complaint, and supporting documents were forwarded to the Sheriff of Carroll County, Grover Sensabaugh (appellant). Unfortunately, an inexperienced deputy was assigned to serve the husband personally, which he failed to do properly. The deputy filed a return stating the summons was served on the husband even though he left it with the husband's new wife. This error caused appellee to incur unnecessary expenses in order to appear at the scheduled hearing which was not attended by her former husband.

On June 19, 1990, the day scheduled for the domestic hearing, when the defendant-father failed to appear before the master, the master discovered that a fraudulent return had been filed by the sheriff's department. His report to the circuit court recommended that a show cause order be issued against appellant to show why he should not be held in contempt. The circuit court, based on this report, initiated contempt proceedings against appellant by issuing the recommended show cause order. On November 13, 1990, the master held the show cause hearing pursuant to the circuit court's order. At this hearing, appellant appeared without counsel and admitted that the return was incorrect and that he knew of this error at least five days prior to the June 19th hearing. He testified that he had discovered the

---

**1.** If exceptions are filed and properly supported, the court must hold a *requested* hearing pursuant to section (i) of Rule 2–541.

**2.** Maryland Rule 2–541 has been substantially amended (effective July 1, 1991) since this case was heard by the circuit court. These amendments, however, do not substantively alter our decision in any way.

error after the husband's attorney made inquiries and failed to notify the court because he believed the attorney would take care of the problem. She did not.

After the show cause hearing, the master recommended that the sheriff be found in contempt. Appellant filed exceptions to this report which were later dismissed by the Circuit Court of Carroll County for failure to provide a transcript as required by Maryland Rule 2–541(h)(2). The trial court then found appellant in contempt based upon the master's recommendation. Appellant now seeks review of that decision. The questions presented by appellant include:

    I. Whether a master is authorized to conduct a contempt hearing on issues other than those authorized by Maryland Rule 2–541(b)(7)?

    II. Whether the circuit court must hold a hearing prior to finding contempt? [3]

Before addressing the contentions raised by appellant, we consider it necessary to comment on the nature of the remedy sought in this case.

The Maryland Courts and Judicial Proceedings Article, section 2–304(c) (1989), provides that a sheriff may be held in contempt if he fails to file a return on a suit mailed to him for service in his county. Under the facts of the case

---

**3.** Appellee contends that appellant has not preserved these issues for appeal. Appellee asserts that when the court dismissed appellant's exceptions it effectively nullified his attempt to raise them. In addition, appellee argues that appellant acquiesced to the master's authority. Even if either of these propositions were true, neither one can prevent the review of the issue of jurisdiction by an appellate court. Md.Rule 8–131(a). Ordinarily, we will not "decide any point or question that does not plainly appear by the record to have been tried and decided by the lower court. An exception is made, however, in the matter of jurisdiction, since jurisdiction cannot be conferred on the Court by waiver or consent of the parties." *Jones v. Jones,* 259 Md. 336, 342, 270 A.2d 126 (1970) (discussing the predecessor of 8–131, Rule 885). *See also Resh v. Resh,* 271 Md. 133, 137, 314 A.2d 109 (1974); *Brockington v. State,* 85 Md.App. 165, 169 n. 4, 582 A.2d 568 (1990), *cert. denied,* 322 Md. 613, 589 A.2d 57 (1991). Because appellant cannot confer jurisdiction by his consent or waiver, we may address the jurisdictional issues he raises before us.

at bar, this section does not apply. Other provisions, sections 2–304, 2–305, 2–306, and 2–308(b), provide for penalties and remedies against a sheriff for the non-performance of certain duties. None of these other sections provide for contempt as a sanction when a sheriff fails to perform his duties.

Appellee argued below that a sheriff not only may be found in contempt for failure to file a proper return but that damages may be awarded citing, *Main v. Lynch*, 54 Md. 658 (1880), and relying as well on cases cited in *Binney's Case*, 2 Bland 99, 101 n. (f) (1829). First, *Main* does not hold that a sheriff can be held in contempt for a bad return but that a sheriff must be permitted to amend such a return. 54 Md. at 669. The Court opined, as dicta, that a sheriff is answerable for neglect of duty including the filing of a false return, whether filed intentionally or unintentionally. *Id.* While the court opined that a sheriff can be held answerable, neither *Main* nor any authority of which we are aware holds that a sheriff who has not violated a court order nor disrupted proceedings can be held in contempt for misfeasance or malfeasance in the absence of a relevant statute.

There is a reference in the body of the opinion of the High Court of Chancery in the matter of *Binney's Case* that a sheriff may be ordered to bring in the "body" of a party and a footnote to that reference states:

> (f) *Lee v. Sweetman*, 1713.—Ordered, that an attachment of contempt issue against the sheriff for not returning his writs of attachment against the defendant.— *Chancery Proceedings, lib. P.L. fol. 11.*

2 Bland at 101. The footnote lists several other ancient Maryland cases in reference to actions against sheriffs on which appellee has relied. Several of those notes refer to holding a sheriff in contempt for failing to have a defendant or other party in court after having been served with writs of attachment. Other notes discuss a sheriff being subject

to amercement.[4] While it is not entirely clear, it appears that in those cases to which the footnote refers that a sheriff is being held in contempt, *orders* were issued by the court to the sheriff which the sheriff disobeyed.

While there is evidence in the case at bar that the sheriff failed to comply with the statutes and rules relating to service, there is no evidence of the violation of a court order. The circuit courts certainly have jurisdiction to entertain contempt proceedings in respect to a sheriff where the sheriff has committed a direct contempt disrupting the court's proceedings or it is alleged that he has contemptuously refused to abide by an order of the court or it is so provided by statute. It is not clear, and may even be doubtful, that the omissions complained of here constituted contempt in the first instance. Appellant, however, has failed to raise this issue. We, therefore, will not address the underlying question of the appropriateness of the type of action conducted against Sheriff Sensabaugh. Md.Rule 8–131.

### I.

Is a master authorized to conduct a contempt hearing of matters other than those authorized by Maryland Rule 2–541(b)(7)?

We have attempted to discern from the records of the Court of Appeals Standing Committee on Rules of Practice and Procedure what that committee's purpose was in the recommendation of the adoption of the rules concerning contempt and a master's involvement in such proceedings. Our efforts have not been substantially fruitful. Some light, however, may be gleaned from the little that is contained in those records and from the absence of certain matters therein.

---

**4.** Current statutory provisions still provide for amercement. Md.Code Ann., Cts. & Jud.Proc. §§ 2–304(d), 2–305(b), 2–306 (1989).

The minutes of the April 22, 1977, meeting of the committee reflect some consideration of the rule.[5]  The minutes provide that the committee was considering a letter from Judge William McCullough containing certain recommendations.  The minutes reflect that Judge McCullough's second suggestion was "the amendment and enlargement of section g. 1 (Time of Entry of Order—Immediate Order) to permit entry of immediate orders in other than *pendente lite* cases, including contempt."  The minutes subsequently reflect the following:

> Mr. Rodowsky stated that he believed Judge McCullough's second point was well taken, with respect to immediate orders, and that he proposed inclusion in the second line of subsection g. 1(ii) following "order,", the words "upon a master's determination of contempt,".

> Mr. Myerberg stated that such an amendment would raise a serious constitutional question, and that he believed it unconstitutional for a master to hold a party in contempt.  Masters in Baltimore City have no such power.

> Mr. Owens and Judge McAuliffe agreed that in Montgomery County masters have no power to hold a party in contempt.

> Mr. Myerberg asked how a master could hold a party in contempt of an immediate order, if the party had ten days within which to except to the master's report?

> A discussion ensued, during which Judge Ross expressed concern that the 10 day time within which to file exceptions might prevent a judge from ruling on contempt.  He stated that the court's hands should not be so tied.  The hearing by the judge was not a hearing on exceptions, but on a contempt citation by the master and referred to the court.

> Mr. Myerberg stated that masters should have no jurisdiction in either custody or contempt matters, that these

---

5.  The discussion focused on Rule 596 (masters)—the predecessor to Rule 2–541.

issues were too important to allow masters to determine them. The Chairman concurred that masters should not handle contempt matters.

Judge Ross stated that in Baltimore City, Lucy Garvey had been handling contempt matters for years, and that it works well. He acknowledged, however, that although the master determines *prima facie* that a party is in contempt, a judge actually signs the order.

Judge McAuliffe thereupon moved the deletion of subsection c. 4, and the motion was seconded. The Chairman called for a vote, and the motion carried on a vote of eight for to six against.

Mr. Myerberg acknowledged that the impact of deleting contempt from a master's jurisdiction will be tremendous, as it will throw back many cases onto judges, and will only delay civil cases further. He reiterated his opinion, however, that it was simply not justice to allow a master to determine contempt.

Mr. Tabor asked whether a master shouldn't initially have the power to determine contempt? In Baltimore City Lucy Garvey disposes of many cases by being able to determine contempt, at least *prima facie.*

Mr. Rodowsky stated that the issue should probably be restated; *should the determination of contempt be heard only by a judge, or initially by a master, and be heard by a judge only on exceptions taken to the master's determination?*

There being several suggestions for a recount of the vote on Judge McAuliffe's motion to delete subsection c. 4, the Chairman called for a recount, which resulted in a vote of four for deletion to 10 against deletion, thereby reversing the prior result.

Judge Ross suggested that the proposed rule be referred back to the Subcommittee to draft a further amendment to subsection g. 1(ii), or the possible addition of a new subsection g. 1(iii) to provide for an immediate hearing on a master's citation for contempt, so as to negate that a party has ten days to file exceptions, and

thus cannot immediately be held in contempt. After some further discussion, the proposed rule was referred back to the Subcommittee for the drafting of an amendment as suggested by Judge Ross. [Emphasis added.]

The rule was again considered by the Committee at its meeting on September 11, 1981. The minutes of that meeting, however, reflect that the committee was primarily considering the rules relating to auditors and examiners. The proposed examiner rule provided:

(b) When Reference to Examiner Made

With consent of all parties or on the motion of a party or on its own initiative, the court may refer issues not triable by right before a jury to an examiner for the taking of evidence.

At this meeting, the minutes further reflect that those in attendance discussed the desirability of attempting to make the provisions relative to masters and examiners parallel at least in some respects.

Some members questioned why this rule [on examiners] does not more closely track the language of the master rule.... The Chairman directed the style subcommittee to ensure that these rules are parallel to the extent possible.

The current section (c), "Referral by Order", was first added to the rule in the 1985 Replacement Volume of the rules. The rule merely noted as a source that "Section C is new." Interestingly, in the same volume similar (though more extensive) sections are added to Rule 2–542 Examiners and Rule 2–543 Auditors as section (b). In each instance, the source notes state that "section (b) is new."

While certainly not conclusive, it would appear that section (c) of Rule 2–541 may well have been added by the style subcommittee in order to parallel similar provisions proposed for the Examiner and Auditor Rules. In any event, our scrutiny of the available pertinent records of the Standing Committee has not revealed that, during the deliberations of that body, it had any purpose or intendment that

the words used in Maryland Rule 2–541(c) were to connote anything other than the plain meaning of the language used.  We, accordingly, shall construe the rule according to its terms, giving them their ordinary meaning.

With that in mind, we first note that appellant concedes that "there are two ways that a dispute involving contempt might be referred to a Master."  Former Maryland Rule 2–541 provides for "Referral as of Course", section (b), and "Referral by Order", section (c).  Among those matters that are referred to a master as a matter of course are "[c]ontempt by reason of noncompliance with an order or judgment relating to the payment of alimony or support or the possession or use of the family home or family-use personal property...."  Rule 2–541(b)(7).  Although this matter originally arose as a domestic dispute, the sheriff's contempt, if any, does not relate to a violation of the domestic law as stated in section (b)(7).  Thus, the master did not receive the authority to conduct a contempt proceeding as a matter of course.

Masters also receive matters on referral from the court.  Section (c) provides that "the court may order that issues not triable of right before a jury be referred to a master."  The only limit placed upon these matters is that a party cannot have a right to a jury trial on the issue referred.  Contempt proceedings are not excluded by this language.  "There is no right to a jury trial in civil contempt proceedings." *Lee v. State,* 56 Md.App. 613, 623, 468 A.2d 656 (1983); *Meyers v. State,* 23 Md.App. 275, 279, 326 A.2d 773 (1974).  In a criminal contempt proceeding, the right to a jury trial arises only where the sentence exceeds six months and the state can conduct a contempt proceeding without a jury if the court restricts the sentence to less than six months.  *Whitaker v. Prince George's County,* 307 Md. 368, 387–88, 514 A.2d 4 (1986).  *See also Mitchell v. State,* 320 Md. 756, 760 n. 1, 580 A.2d 196 (1990).  Thus, contempt proceedings on issues other than those stated in (b)(7) may be referred to the master.

The contempt proceeding in the case *sub judice* was referred to the master pursuant to the show cause order issued October 11, 1990. The trial court itself recalled "specifically authoriz[ing] the Master to hear it and make recommendations to the Court." Appellant conceded during oral argument that the circuit court's assignment of this case to "courtroom 5" was notice to the parties that the master would hold the hearing. We hold that the show cause order under the present circumstances was sufficient to authorize the master to conduct the hearing.

## II.

Is the circuit court required to hold a hearing prior to finding contempt?

■ Appellant further alleges that the master only has the authority to recommend a contempt proceeding, but not the power to find contempt has been committed.[6] He asserts that section (g)(3) mandates that a circuit court must always hold a hearing before it finds contempt and that it cannot refer the hearing to a master. He reaches this conclusion based on a "careful reading" of the rule. We, however, believe that appellant's reading is convoluted.

Appellant states that section (d)(6) gives the master the limited power to "[r]ecommend contempt proceedings or other sanctions...." By using the word "proceeding" in the rule, appellant argues the Court intended to place a restriction on the master's power. The appellant continues his argument by citing to section (g)(3) which provides: "On the recommendation by the master that *an individual be found in contempt,* the court *may* hold a hearing and enter an order at any time." (Emphasis added.) Appellant then concludes that in cases other than those listed in section (b)(7) a master may only recommend contempt proceedings and the circuit court must then hold a hearing based on this

---

**6.** We assume appellant means that the master could not recommend a finding of contempt. Masters only make recommendations; they do not issue judgments of contempt.

recommendation in compliance with section (g)(3) and that the court cannot refer this subsequent hearing back to the master.

The Court of Appeals has stated that the principles and rules of statutory construction also apply when interpreting the Maryland Rules. *State v. Romulus,* 315 Md. 526, 533, 555 A.2d 494 (1989). "In construing a statute, we look first to its language; in so doing, we assume that the words of the statute are intended to have their natural, ordinary and generally understood meaning in the absence of evidence to the contrary." *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990) (citations omitted). The appellant's interpretation of the rule does not employ the "natural, ordinary" meaning of the words nor is it a sound interpretation of the rule's intent.

First, section (b)(7) lists specific issues of contempt that a master will hear as a matter of course (*i.e.,* without referral by the court), but it does not necessarily follow that a master's authority is limited to those instances only. Section (b) relates only to domestic matters; to place other contempt issues unrelated to domestic law in that section would not have been logical. As stated above, other contempt matters may be referred to the master under section (c). Second, section (d)(6) states that a master can recommend a contempt proceeding. This does not mean that the master cannot also conduct a contempt hearing when ordered to do so by the court under section (c). The language of the "powers" section does not place restrictions on which matters might be assigned to a master under the "referral" section. Once a master has recommended a contempt proceeding it is necessary for the court to issue the show cause order because the master does not have the power to issue such orders. Then the court may, as we have indicated, refer the matter back to the master to "[m]ake findings of fact and conclusions of law" in a hearing on the issue of contempt. Rule 2–541(d)(7).

Giving the words of former Maryland Rule 2–541 their ordinary meaning, we hold that a master has the authority

to conduct contempt proceedings on any matter referred to it pursuant to section (c) and that the circuit court is not required to hold another hearing in order to accept the recommendation of the master [7] so long as it exercises its independent discretion in accordance with *Domingues v. Johnson,* 323 Md. 486, 593 A.2d 1133 (1991).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

7.  *But see* footnote 1, *supra.*