## CITY OF NEW CARROLLTON *v.* BELSINGER SIGNS, INC.

[No. 397, September Term, 1971.]

*Decided July 3, 1972.*

The cause was submitted on briefs to BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and IRVING A. LEVINE, Associate Judge of the Sixth Judicial Circuit, specially assigned.

Submitted by *Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid, Daniel R. Thompson* and *George W. Shaffer* for appellant.

Submitted by *James J. Lombardi, Lombardi, Casula & Hertz* and *Frank W. Braden, Jr.,* for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The appellant (Carrollton) is the Johnny-come-lately (1953) of Prince George's County's 29 incorporated towns. It lies just inside the Capital Beltway (U.S. 495) and immediately north of Maryland Route 450.

In 1963 its City Council adopted an ordinance to regulate "signs, billboards and other advertising devices" within the corporate limits of the town. Section 3 (5) (a) of the ordinance is as follows:

"Free standing signs. Any person, partnership, corporation or other business entity doing business within the corporate limits of the City of Carrollton, which is not part of an integrated shopping center, may erect a sign having a total area of not over one hundred fifty (150)

square feet and not exceeding twenty-five (25) feet in height. One sign for buildings comprising an integrated shopping center or similar group of buildings, announcing only the name or location of the shopping center or building, may be erected. Such signs shall be limited to two hundred (200) square feet in area and thirty (30) feet in height."

Section 5 of the ordinance, oddly enough, seems to make it possible for the Council to abrogate its provisions virtually at will. Section 5 provides that:

"Upon request for an exemption to the provisions of this ordinance made in writing to the Mayor and Council by a person seeking to erect, repair or alter a sign within the corporate limits of the City of Carrollton, the Mayor and Council may, upon a showing of reasonable grounds therefor by the person seeking said exemption, grant the exemption request and permit the desired erection, repair or alteration of a sign although all of the requirements of this ordinance have not been complied with."

In 1968 the Marriott Corporation decided to put one of its restaurants in what is known as the Plaza 30 Shopping Center. The site selected for the purpose was adjacent to Route 450 but some 200 feet below the surface of the road. As a result passing motorists often failed to see either the restaurant or the small sign on its rooftop. To overcome this disadvantage Marriott, in the fall of 1970, contracted with the appellee (Belsinger) for the construction, using bricks and cinder blocks, of a "double-faced, internally lit, free-standing" sign to be placed alongside the highway so as to be visible to passing motorists. The shopping center had erected a sign listing its shops but Marriott, for reasons undisclosed, had not been able to have its restaurant included.

Unaware of the Carrollton ordinance Belsinger applied to the Prince George's County Department of Inspection

and Permits for a building permit. The applicable county zoning ordinance appears to have been Section 25.62 (b) (1) of the Prince George's County Zoning Ordinance, which is as follows:

"(b) In the C-1, C-2, I-1, I-2, R-P-C (C-1), R-P-C (C-2), R-P-C (I-1), and R-C-P (I-2) Zones, a free standing or ground supported sign identifying an integrated shopping center, or integrated industrial center may be erected, subject to the following conditions and requirements:

| (1) Total Street Frontage on All Streets of Center | No. of Signs Permitted |
|---|---|
| 0 to less than 100 feet | None |
| 100 to 1,100 feet | One |
| Each additional 1,000 feet, or fraction thereof | One " |

On 10 September the Maryland-National Capital Park and Planning Commission (M-NCPPC) approved Belsinger's application. The county issued the permit on 14 September. The sign was erected in March 1971 at a cost of $9,306.

Soon after Belsinger had erected the sign Carrollton's City Administrator notified him that it was in violation of Section 3 (5) (a) of the ordinance. Belsinger applied immediately for a permit and the waiver provided by Section 5. The Council turned him away and ordered the removal of the sign. On 26 May Belsinger filed his bill of complaint for a declaratory judgment and temporary injunctive relief. The case came on for trial before the chancellor, Bowie, J., on 2 September 1971. On 13 January 1972 Judge Bowie signed and filed a decree declaring the County Council, sitting as the District Council, to have the exclusive right and power to regulate zoning and signs in Prince George's County (except in the City of Laurel), and declaring Section 3(5) (a) of the Carrollton ordinance to be null and void.

Chapter 780 of the Laws of Maryland of 1959 con-

tinued the existence and amplified the jurisdiction and powers of the M-NCPPC (created in 1927), the "Metropolitan District" and the "Regional District" which presently comprises all of Montgomery County and all of Prince George's County except the town of Laurel. *See* Chapter 373, Laws of 1965; *Prince George's County v. Laurel,* 262 Md. 171, 185 (1971). Within the Regional District the County Councils of Montgomery and Prince George's counties are empowered to regulate

> ". . . (1) the location, height, bulk and size of buildings and other structures, building lines, minimum frontages, depths and areas of lots, and percentages of lots which may be occupied; (2) the sizes of yards, courts, and other open spaces; (3) the erection of temporary stands and structures; (4) the density and distribution of population; (5) the uses of buildings and structures for trade, industry, residence, recreation, agriculture, public activities, or other purposes; and (6) the uses of land for trade, industry, residence, recreation, agriculture, forestry, or other purposes. . . ." Laws of 1959, ch. 780, § 75.

Section 57 of the 1959 act enlarged the boundaries of the Regional District and went on to provide in subsection d (3) that:

> "No municipal corporation within either of the areas added by this sub-section to the Regional District shall be authorized, by means of an amendment to its charter or otherwise, to exercise any of the powers relating to planning, sub-division control, or zoning now or hereafter granted by this Article to the Commission or the County Commissioners of Prince George's County. . . ."

There can be no doubt (indeed Carrollton concedes) that the power to zone within the Regional District is vested

exclusively in M-NCPPC and the District Councils. But we are not unmindful of section 4.01 (a) of the state-wide planning and zoning law, Code (1970 Repl. Vol.), Art. 66B, which provides:

> "For the purpose of promoting health, safety, morals, or the general welfare of the community the legislative body of counties and municipal corporations are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the per-centage of lot that may be occupied, off-street parking, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, *signs,* structures and land for trade, industry, residence or other pur-poses." (Emphasis added.)

While subsection 4.01 (a) seems to empower municipal corporations to zone and to regulate signs it is entirely clear that in the Regional District it is without force or effect. Section 7.02 of Art. 66B provides that

> ". . . within the limits of the Maryland-Wash-ington regional district . . . insofar as the pro-visions of this article may be inconsistent with or contrary to the provisions of Chapter 992 of the Laws of Maryland of 1943, as amended [an earlier version of the Regional District Act]; such provisions shall have no application with-in the Maryland-Washington regional district . . . ."

Thus it would seem that the Legislature has emphasized the authority of the Park and Planning Commission to exercise exclusive zoning power in the Regional District. *Middleman v. Maryland-National Capital Park and Plan-ning Comm'n,* 232 Md. 285, 291 (1963). *See generally* Moser, *County Home Rule—Sharing the State's Legisla-tive Power with Maryland Counties,* 28 Md. L. Rev. 327 (1968). Section 85 (a) of the 1959 act also recognizes the

exclusion of the Regional District from the provisions of Article 66B:

> "Within the Regional District, the zoning powers or any of them vested by Article 66B of the Annotated Code of Maryland in any municipality or council of any municipality within the Regional District shall be construed to be vested exclusively in and may be exercised within their discretion only by the County Council of Montgomery County or the County Commissioners of Prince George's County, each acting respectively as a District Council."

Although Carrollton "does not contest the conclusion that . . . [the Act of 1959] effectively withdrew from all municipalities in Prince George's County, with the exception of Laurel, the power to pass and enforce zoning ordinances" it argues quite earnestly that the act withdrew *"only* the authority to zone." It insists that since there is no mention in the 1959 act either of sign regulation or of the general police power it was then and still is empowered to pass and enforce its sign ordinance.

Whether the regulation of signs is or is not the exclusive function of the zoning body is a sticky question the resolution of which usually depends upon the exigencies of the particular case. Authority can be found to support either stance. As we see the case before us, however, it will not be necessary for us to deal with that question. Carrollton claims to be empowered to enact such an ordinance by virtue of the provisions of Code (1966 Repl. Vol.), Art. 23A, § 2 (5), which provides that

> "[t]he legislative body of every incorporated municipality . . . shall have general power to pass such ordinances not contrary to the public general or public local laws and the Constitution of Maryland as they may deem necessary in order to assure the good government of the municipality, to protect and preserve the munici-

pality's rights, property, and privileges, to preserve peace and good order, to secure persons and property from danger and destruction, and to protect the health, comfort and convenience of the citizens of the municipality; but nothing in this article shall be construed to authorize the legislative body of any incorporated municipality to pass any ordinance which is inconsistent or in conflict with any ordinance, rule or regulation passed, ordained or adopted by the Maryland-National Capital Park and Planning Commission and the Washington Suburban Sanitary Commission . . . ."

"In addition to, but not in substitution of, the powers which have been or may hereafter be, granted to it, such legislative body also shall have the following express ordinance-making powers:

\* \* \*

"(5) *Building regulations.* — To make reasonable regulations concerning buildings and *signs* to be erected within the limits of the municipality, including a building code and the requirement for building permits." (Emphasis added.)

It is a curious facet of this case that neither party has mentioned § 4 of Art. 23A which seems to us to settle the matter. Section 4 provides that:

"None of the provisions of §§ 1, 2 and 3 of this article shall be construed to apply to Worcester, Kent, Caroline, Allegany, Washington, Calvert, Wicomico, Dorchester, Somerset, Baltimore, Anne Arundel, Cecil, Charles, Frederick, Prince George's, and St. Mary's counties, said counties being hereby expressly exempt from the provisions thereof except that the provisions of §§ 1, 2 and 3 shall apply to that area of Prince

George's County within the corporate limits of the City of Takoma Park."

In this regard it will be recalled that quite recently we referred to the well settled principle that a municipal corporation has only limited powers. In *McRobie v. Town of Westernport,* 260 Md. 464, 466 (1971), Judge Digges said for the Court:

> "Westernport, as a municipal corporation, possesses only limited powers. In *Montgomery Co. v. Met. District,* 202 Md. 293, 304, 96 A. 2d 353 (1953), this Court, quoting with approval from 1 Dillon, *Municipal Corporations,* § 237 (5th ed.), said—
>
> " ' "a *municipal corporation . . . can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient but indispensable." ' "

*See also* Moser, *supra,* at 330.

It seems hardly necessary to argue—indeed we think it is self-evident—that Carrollton is a "Dillon" municipality, and that absent the availability of § 2 (5) of Art. 23A it was impotent in respect of the regulation of signs. Section 4 makes it unequivocally clear that § 2 (5) was not and is not available to it. Moreover, Carrollton has not alleged, nor have we found, any act or effort on its part subsequent to its incorporation in 1953 which could be said to have provided that power.

We shall modify the decree [1] filed by Judge Bowie by

---

1. "Accordingly, it is this 13th day of January, 1972, by the Circuit Court for Prince George's County, Maryland,
"ADJUDGED, ORDERED and DECREED, that the County Council of Prince George's County, sitting as the District Council, has the exclusive right and power to regulate zoning and signs in Prince George's County,

striking out the first, third and fourth paragraphs thereof and as modified we shall affirm his decree but we shall remand the case for a reconsideration of what is proper to include in the costs. There is a claim that counsel fees were included and we see no reason why they should be included. Code (1971 Repl. Vol.), Art. 31A, § 10; Maryland Rule 604 a, b.

> *Decree modified and as modified affirmed.*
> *Case remanded for a reconsideration of the matter of costs.*
> *Costs in this Court to be paid by the appellant.*

with the exception, as noted above, of the City of Laurel; and it is further

"ADJUDGED, ORDERED and DECREED, that Section 3 (5)(a) of the Sign Ordinance of the defendant City of New Carrollton is rendered null and void for the reasons set forth above; and it is further

"ADJUDGED, ORDERED and DECREED, that the defendant City of New Carrollton forthwith issue to the plaintiff, Belsinger Signs, Inc., a permit for the erection of a sign, and it is further

"ADJUDGED, ORDERED and DECREED, that the defendant pay the costs of this suit."