WAYNE TOWNSHIP BOARD OF AUDITORS, DU PAGE COUNTY, Petitioner-Appellee, *v.* JOHN O. VOGEL, Supervisor of General Assistance of Wayne Township, Du Page County, Respondent-Appellant.

Second District No. 78-168

Opinion filed January 30, 1979.—Rehearing denied March 19, 1979.

John O. Vogel, of West Chicago, for appellant.

James F. Campion, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This case is a mandamus action brought by the Wayne Township Board of Auditors (hereinafter the Board) against the township supervisor of general assistance, John Vogel (hereinafter Supervisor), to compel him to submit the files, papers, correspondence and records of the public

assistance programs of Wayne Township. Prior to filing this mandamus action, the Board had demanded the names, addresses and amounts of assistance paid to relief recipients. The Supervisor refused to do so unless the Board adopted "proper rules and regulations respecting the confidentiality of the records" or that the members of the Board sign affidavits "respecting said confidentiality."

The Supervisor contended that he had a duty imposed upon him to "protect the dignity of public aid recipients."

The trial court issued a writ of mandamus, finding that the Supervisor had the duty to submit the records of the public assistance program to the Township Board of Auditors; that the Board had the authority to request such records be submitted in such form as directed; and ordering the Supervisor to submit such records as so requested. The Supervisor complied with the writ. The trial court further entered judgment against the Supervisor, individually, for $3682 on its interpretation that "damages" was a unique provision in the mandamus act which covers the awarding of attorney's fees.

The Supervisor has raised three issues, viz.: (1) the petition for the writ of mandamus should have been denied; (2) the trial court erred in finding that section 5 of the mandamus act (Ill. Rev. Stat. 1975, ch. 87, par. 5) allowing damages included attorney's fees; and (3) the respondent was acting in his official capacity and that any judgment should have been a charge upon him in his official capacity.

As noted above, the Supervisor refused to deliver the records in question unless the Board adopted rules and regulations respecting confidentiality of the records or that they sign affidavits which would respect such confidentiality. The trial court correctly ruled that the burden of confidentiality, as set forth in the pertinent provisions of the Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, pars. 11—9 through 11—12), in the case before us, is upon the Board and not upon the Supervisor. As the trial court observed here:

> "* * * it wasn't up to one or the other of them to be the keeper of the conscience of all the other people or to impose extra statutory requirements upon this exchange of information among public officials."

We agree.

■■ Section 11—9 does not specifically make confidential the names, addresses and amounts of grants to recipients. We also note that section 11—11 provides that:

> "County Departments shall maintain monthly at their offices registers showing the names and addresses of all grantees of record receiving public aid under Articles III and IV of this Code, together with the amount paid to each grantee during the

preceding month. Local governmental units shall maintain similar monthly registers for recipients of public aid under Articles VI and VII. No information other than names, addresses and amounts of grants shall be included in these reports. Each report shall be securely bound in a record book provided for this purpose and shall, except as otherwise provided in Section 11—9, be open to public inspection at all times during the regular office hours of the county department or local governmental unit." (Ill. Rev. Stat. 1975, ch. 23, par. 11—11.)

It can thus be seen that section 11—11 provides that an employee of the local governmental unit may rely on a statement under oath by the party seeking inspection of the record book that the information will not be used for political or commercial purposes. Section 11—12 provides a criminal penalty for publication of, or use of, such names for political or commercial purposes.

It can thus be seen that the legislative purpose set forth in these statutory provisions is that first, the identities of the recipients of public aid and the amounts paid to them shall not be kept secret, and indeed should be kept available for public inspection. Recent prosecutions and convictions of unlawful payments to public aid recipients are indicative of the legislative wisdom in making such information available. However, the second purpose behind the restrictions placed upon such disclosure is likewise self-evident—such information shall not be used for political or commercial purposes and shall not be published.

 It is fundamental that a public official may not refuse to comply with a statute on the ground that if he complies with the statutory duty to deliver records the receiving public official might violate the law by disclosing any confidential records. That was the sole reason that the Supervisor refused to deliver the records to the Board, as required by statute. The respondent agrees that he has the obligation to submit "reports" as the Board might require, but seemingly argues that he does not have to submit "records" which were ordered delivered by the writ of mandamus. He contends that the writ went beyond the mandate of the statute. He seeks to buttress this argument on the ground that the Board had not directed him as to what "records" he should have kept and that his duty would be to submit "reports" to the Board pursuant to section 12—21.8, which provides in pertinent part:

"The Supervisor of General Assistance shall keep such *records* and submit annually and at such other times as their respective * * * board of town auditors may require, *reports* relating to the administration of such public aid programs as are the responsibility of the local governmental unit * * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 23, par. 12—21.8.)

He contends that this is not a question of which came first the chicken or the egg. We disagree and believe that that is just the question. It is not merely the duty of the Supervisor to submit "reports" based on "records." Respondent is a public official, has the duty to keep records pertaining to public assistance and the fact that the Board has not delineated the procedure or form in which they are to be kept obviously does not excuse the Supervisor from keeping an accurate record of his payout of public funds. And, such information is and should be available to that governmental unit charged with auditing those expenditures—the Board of Town Auditors. We therefore find that the trial court properly issued the writ of mandamus directing the Supervisor to turn over the requested public assistance records to the Board.

We now turn to the question of awarding attorney's fees as "damages" in a mandamus action. Section 5 of the mandamus act (Ill. Rev. Stat. 1975, ch. 87, par. 5) provides as follows:

> "If judgment is given for the petitioner he shall recover his damages and costs, as a peremptory writ of mandamus shall be granted. If judgment is given for defendant, he shall recover his costs."

The trial court had considerable difficulty in determining whether attorney's fees should be awarded. The Board, subsequent to the issuance of the writ of mandamus, petitioned the court for the recovery of costs in the following manner:

> "The I.R.S. 1975 Chapter 87, Section 5, provides authority for recovery of costs incurred if judgment for a Writ of Mandamus is given.
>
> 5. That the Town of Wayne has incurred $4,186.00 [*sic*] in legal costs in connection with this action."

It would appear that the only disbursements made out of public funds relating to this lawsuit were for the payment of attorney's fees to both the attorney for the Township and attorney for the Supervisor. The court then allowed the petition for "costs" to be amended by striking the word "costs" and substituting in lieu thereof "fees incurred". The court explicitly found that:

> "* * * the statutory provision for recovery of damages at Section 5 of Chapter 87 of the Illinois Revised Statutes is construed to include within the provision for damages, attorney fees expended by Plaintiff for legal services of Plaintiff and Defendant."

The court thereupon entered judgment for attorney's fees in the sum of $3682 against the defendant, individually.

Upon rehearing, the trial court observed that it was a difficult question to determine as to whether the expenditures for attorney's fees

came within the statutory provision of the mandamus act, which allows "damages," observing that attorney's fees were not included in "costs." The court further observed that the contention of the defendant was that attorney's fees should not be allowed unless there is "some sort of statutory provision" therefor. It concluded that the award of attorney's fees was included in the unique provision for damages and costs in the mandamus act.

The trial court's decision was based in large part on the case of *Roesch-Zeller, Inc. v. Hollembeak* (1955), 5 Ill. App. 2d 94, 108, 124 N.E.2d 662, 668. There it was contended that the court:

> " * * * improperly entered judgment against the defendant in his individual capacity for costs and expense incurred in the mandamus proceeding. No objection was made to the particular items that were incorporated in the judgment."

The difficulty in interpreting *Roesch-Zeller* is a determination of what the judgment entered in the sum of $1000.04 included. There is no specific statement that that sum included attorney's fees. We have no way of knowing whether the same did or not. But, in any event, no objection was entered to the imposition of judgment for the items incorporated in the judgment. Therefore, that case is not applicable to the situation before us.

In *People ex rel. Henderson v. Redfern* (1968), 104 Ill. App. 2d 132, 243 N.E.2d 252, the court considered, in part, the application of section 14 of the quo warranto act relative to the collection of costs as provided for in that act. The trial court refused to allow attorney's fees under the provision of that act and the appellate court affirmed, stating:

> "Consideration of the propriety of assessing attorneys' fees is permissible only where the statute specifically allows their assessment and we may not judicially enlarge the phrase 'cost of the prosecution' to include such expense." (*People ex rel. Henderson v. Redfern* (1968), 104 Ill. App. 2d 132, 136, 243 N.E.2d 252, 254.)

The question thus squarely presented to us is whether the mandamus act allowing for "damages" authorizes the awarding of attorney's fees as damages. This question was succinctly answered in *Waller v. Board of Education* (1975), 28 Ill. App. 3d 328, 331, 328 N.E.2d 604, 606-07:

> "The legislature has in the past *specifically* provided for attorneys' fees where it wished to, and the courts have refused to interpret imprecise language as permitting attorneys' fees.
>
> * * *
>
> The legislature has determined when attorney's fees should be awarded. It has been done by specific language such as listing 'attorney's fees' to overcome the common law rule. Where they

have not used such specific language, the courts have consistently refused to give an expanded reading to the legislative language used."

In this connection it is to be observed, of course, contrary to the English system, that the idea of awarding attorney's fees to a successful litigant is not adopted in the United States except in rare instances, and then by statutory provision. See also *Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 364 N.E.2d 595.

■■ We do not agree with the trial court's interpretation here of the meaning of the word "damages" so as to include attorney's fees. Had the legislature wished to include attorney's fees as an item of recovery to a successful litigant in a mandamus action it would have so stated and not done so imprecisely by an inference that the word "damages" would include attorney's fees.

From examination of the record it appears that at least $2112 of the "Damages" that were requested represented payment to the attorney defending this action for the Supervisor. While not necessary for the determination of this case, attention is directed to the case of *Pechous v. Slawko* (1976), 64 Ill. 2d 576, 357 N.E.2d 1144. In that case the supreme court considered the propriety of awarding attorney's fees to the plaintiffs in suits against the legislative bodies of the two communities. The mayor of Berwyn and the village president of Oak Lawn each filed a petition for the awarding of attorney's fees either against the members of the legislative body of each municipality involved or alternatively against the municipalities. The court, in observing that while the litigation was the result of illegal conduct of the two legislative bodies, stated:

"Nevertheless we are of the opinion that these are not proper cases for the award of fees to the attorneys for the plaintiffs. No ground exists for placing the burden of the fees of the attorneys for the plaintiffs or of the attorneys for the defendant members of the legislative bodies upon the taxpayers of the municipalities." (*Pechous v. Slawko* (1976), 64 Ill. 2d 576, 592-93, 357 N.E.2d 1144, 1153.)

We express no opinion as to whether the Township should have paid the defendant's attorney in the first instance or whether or not it may recover those payments from this defendant, as these issues have not been raised on appeal.

The action of the trial court in ordering the writ of mandamus is therefore affirmed. That portion of the subsequent order allowing attorney's fees in the sum of $3682 is reversed.

Affirmed in part and reversed in part.

NASH and LINDBERG, JJ., concur.