651 A.2d 446

## HESS CONSTRUCTION COMPANY

v.

## BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY.

No. 692, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Jan. 5, 1995.

William Karl Wilburn (Seyfarth, Shaw, Fairweather & Geraldson, on the brief), Washington, DC, for appellant.

Maurice Baskin and Venable, Baetjer, Howard & Civiletti, Washington, DC, for amicus curiae, Associated Builders and Contractors of Metropolitan Washington, DC.

Sheldon L. Gnatt (Roger C. Thomas and Reichelt, Nussbaum, LaPlaca & Miller, on the brief), Greenbelt, for appellee.

Argued Before WILNER, C.J., and CATHELL and HOLLANDER, JJ.

CATHELL, Judge.

Appellant, Hess Construction Company (Hess), appeals from a judgment in favor of appellee, the Board of Education of Prince George's County (the Board). The Circuit Court for Prince George's County (Spellbring, Jr., J. presiding), in granting appellant's petition for a writ of mandamus, ultimately declined to include appellant's attorney's fees as damages. We rephrase the question presented to us as:

Whether the trial court erred in not assessing appellant's attorney's fees against appellee under either (1) the provisions of Md.Rule BE44 or (2) the "collateral litigation" rule.

## Facts

The parties, under an Agreed Statement of Facts, agreed below (and on appeal) that Hess was the apparent low bidder for the construction of a new elementary school in Prince George's County, Maryland; that Columbia Construction Co., Inc., the next lowest bidder, complained that Hess's bid was improper for various reasons; that, ultimately, the Board rejected all bids and planned to resolicit new bids; that Hess filed an action under Md.Rule BE40 for a writ of mandamus (as well as for other relief not pertinent to this appeal); that Columbia intervened in that action; that the trial court ruled in Hess's favor and granted its request for a writ of mandamus; that the trial court initially granted Hess its attorney's fees in the amount of $27,231.15; and that, thereafter, upon the Board's objection, the trial court rescinded its previous order granting Hess's attorney's fees.

## The Law

### The General Rule

The general rule applicable in Maryland with respect to awarding attorney's fees has been restated recently by the Court of Appeals in a case in which a majority of that Court,

for the first time, permitted a jury to consider attorney's fees in determining a punitive damage award. *St. Luke Evangelical Lutheran Church, Inc. v. Smith,* 318 Md. 337, 568 A.2d 35 (1990), was a defamation and invasion of privacy suit. The majority initially stated:

Any consideration of a common-law standard for awarding attorney's fees must begin with the prevailing rule in this country. Known as the American Rule, it prohibits the prevailing party in a lawsuit from recovering his attorney's fees as an element of damages. *Alyeska [Pipeline Service Co. v. Wilderness Society],* 421 U.S. [240,] 247, 95 S.Ct. [1612,] 1616, 44 L.Ed.2d [141,] 147 [ (1975) ]; *Empire [Realty Co. v. Fleisher],* 269 Md. [278,] 285, 305 A.2d [144,] 148 [ (1973) ]. A brief history of the American Rule reveals that it evolved from the English Rule, which originated some time before the reign of Edward I. At that time, a successful plaintiff could obtain the costs of litigation as an element of damages. *See* C. McCormick, *Handbook on the Law of Damages* 234, 235 (1935), relying on 2 F. Pollock & F. Maitland, *The History of English Law* 597 (2d ed. 1911).

Beginning with the reign of Henry VIII, this benefit was also extended to successful defendants. McCormick at 235. Consequently, the English Rule—which allows the successful party in a lawsuit to recover from the losing party the costs of litigation, including attorney's fees—became firmly established in the English common-law courts. *Id.* The rule continues in England today. *Alyeska,* 421 U.S. at 245, 95 S.Ct. at 1616, 44 L.Ed.2d at 147–48 (1975); Goodhart, *Costs,* 38 Yale L.J. 849, 849 (1929).

The English Rule was popular in America before the Revolution. McCormick at 235. Originally, the pre-colonial statutes which fixed the scale of recoverable court costs satisfied a substantial portion of the attorney's fees incurred by a successful litigant. *Id.; Restatement (Second) of Torts* § 914, comment a at 492 (1979). This was so even though local statutes rigidly limited the amount recoverable as attorney's fees. McCormick at 235.

Of course, nowhere in this country have statutorily-fixed attorney's fees been revised to keep pace with the fall in the value of money. *Id.* at 236. Such legislative reluctance to keep pace suggests that the principle of full compensation for litigation expenses never firmly took hold in this country. *Id.* at 235–36. This may best be explained by a historic distrust of lawyers prevalent throughout the colonial era, and a then growing preference of the organized bar for fee schedules set by a free market and not hostile legislatures. Leubsdorf, *Toward a History of the American Rule on Attorney Fee Recovery,* 47 Law & Contemp.Probs. 9, 11, 19 (1984).

Nevertheless, there are exceptions to the American Rule. For example, in Maryland, attorney's fees may be awarded when (1) parties to a contract have an agreement to that effect, *Empire,* 269 Md. at 286, 305 A.2d at 148, citing *Webster v. People's Loan, Savings & Deposit Bank,* 160 Md. 57, 152 A. 815 (1931); (2) there is a statute which allows the imposition of such fees, *Freedman v. Seidler,* 233 Md. 39, 47, 194 A.2d 778, 783 (1963); or (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, *McGaw v. Acker, Merrall & C. Co.,* 111 Md. 153, 160, 73 A. 731, 734 (1909). *See also, Empire,* 269 Md. at 286, 305 A.2d at 148; *Fowler v. Benton,* 245 Md. 540, 550, 226 A.2d 556, 563 (1967). Counsel fees may also be awarded when a plaintiff is forced to defend against a malicious prosecution. *Tully v. Dasher,* 250 Md. 424, 442, 244 A.2d 207, 217 (1968).

318 Md. at 344–46, 568 A.2d 35 (footnotes omitted). The majority of the Court then carved out a new (in Maryland) exception to the American Rule with respect to punitive damages. Judge Rodowsky, dissenting, writing for himself, Chief Judge Murphy and Judge McAuliffe, noted:

Philosophically the Court's new rule, but for the label attributed to the additional recovery, does not involve punitive damages at all. Rather, it is a judicially adopted rule of fee shifting, contrary to this Court's historic position of viewing fee shifting as the exercise of legislative or rulemaking power.

. . . .

Conceptually the question presented here is whether this Court, as a matter of decisional law, should adopt for cases in which punitive damages are awarded an exception to the American rule on counsel fees. For more than 165 years it has been settled in Maryland that fees between attorney and client are not, absent statute, awarded to the prevailing party and are not taxed as costs in the judgment. Nor are counsel fees awarded as damages, absent a contract so providing, or special circumstances. *See Taylor v. Wahby,* 271 Md. 101, 115–16, 314 A.2d 100, 107–08 (1974); *Empire Realty Co. v. Fleisher,* 269 Md. 278, 285–86, 305 A.2d 144, 148 (1973); *New Carrollton v. Belsinger Signs, Inc.,* 266 Md. 229, 238, 292 A.2d 648, 652 (1972); *Marney v. Stack,* 261 Md. 78, 81, 273 A.2d 426, 428 (1971); *Freedman v. Seidler,* 233 Md. 39, 47, 194 A.2d 778, 783 (1963); *Harry's Thrifty Tavern, Inc. v. Pitarra,* 224 Md. 56, 63, 166 A.2d 908, 912 (1961); *Rice v. Biltmore Apartments Co.,* 141 Md. 507, 516–17, 119 A. 364, 367 (1922); *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 160, 73 A. 731, 734 (1909); *Hollander v. Central Metal & Supply Co.,* 109 Md. 131, 154–55, 71 A. 442, 446 (1908); *Hamilton v. Trundle,* 100 Md. 276, 278–79, 59 A. 719, 719–20 (1905); *Singer v. Fidelity & Deposit Co.,* 96 Md. 221, 224, 54 A. 63 (1903); *McGraw v. Canton,* 74 Md. 554, 558–59, 22 A. 132 (1891); *Wood v. State, Use of White,* 66 Md. 61, 69–70, 5 A. 476, 478–79 (1886); *Corner v. Mackintosh,* 48 Md. 374, 390 (1878); *Marshall v. Cooper,* 43 Md. 46, 62 (1875); *Wallis v. Dilley,* 7 Md. 237, 249 (1854); *Kiersted v. Rogers,* 6 H. & J. 282, 286–87 (1823); *Strike's Case,* 1 Bland 57, 98–99, *aff'd Strike v. McDonald & Son,* 2 H. & G. 191 (1826).

. . . .

Historically, in Maryland, creation of exceptions to the American rule has been allocated to legislative or rulemaking action. The majority's prediction of the benefits to be achieved in punitive damage cases by creating an exception to the American rule for those cases is too tenuous a prediction, in my view, to justify departing from the historic

pattern. If there is some public support for fee shifting in punitive damage cases, the General Assembly is in a better position than this Court to weigh the probability of the majority's prediction by taking testimony on how the rule has worked in the handful of jurisdictions which have adopted it.

*Id.* at 355–61, 568 A.2d 35 (footnotes omitted).

The instant case does not involve punitive damages or any of the exceptions to the American Rule except to the extent appellant relies on Maryland Rule BE44 and the "collateral litigation" rule. We next note that the proper interpretation of Md.Rule BE44 and its history in conjunction with the law of false returns does not support reliance on Rule BE44 as a vehicle for the imposition of attorney's fees against the losing party. We shall also hereafter address the "collateral litigation" rule in this regard.

### 1.

**Appellant asserts that the Legislative Intent and History of Rule BE44 supports an award of attorney's fees to the successful litigant.**

 To the contrary, it does not. Appellant has been misled by its interpretation of language in a previous statute (Chapter 285 of the Laws of 1858) that "such further proceedings shall there upon be had ... as if the petitioner had brought an action on the case for a false return ... such petitioner shall there upon recover his damages and costs as he might have done in such action on the case aforesaid...." Appellant's interpretation of that language and its similarity with language in a later codification in Md.Code Art. 60 of mandamus procedures leads appellant to the position it attempts to assert in the case *sub judice*. When describing the enactment of the later statute, Article 60 (the predecessor to the current BE Rules), appellant relies on a statement in an "Explanatory Note" in the subcommittee's proceedings evidencing an intent that a petitioner be permitted to "recover his damages ... as he might have done in an action on the

case for a false return." Ultimately, the provision of Article 60 first became Rule 1240e, and then Md.Rule BE44.[1]

Appellant, in its brief, alleges that an action on a false return "generally speaking, arises when a person ... summoned ... has been damaged through the intentional or unintentional filing of a false return by a sheriff," citing *Main v. Lynch*, 54 Md. 658 (1880), and our recent case of *Sensabaugh v. Gorday*, 90 Md.App. 379, 600 A.2d 1204 (1992). Because the trial court permitted attorney's fees to be assessed in *Sensabaugh*, appellant asserts that it is entitled to them in the instant case.

Appellant has misconstrued the entire nature of the "false return" to which the subcommittee and the prior statutes refer. Sheriff's returns and the *Sensabaugh* case are completely irrelevant. The false return with which the statute and the subcommittee were concerned was the response to a petition for mandamus that was historically referred to as a "return."

> In Maryland, mandamus is a writ in the nature of a prerogative writ, and is an extraordinary remedy.... [M]any courts, including this one, and text-writers have stated that mandamus may be compared to a bill in equity for specific performance.

*Ipes v. Board of Fire Comm'rs*, 224 Md. 180, 183, 167 A.2d 337 (1961). *See also Town of District Heights v. County Comm'rs*, 210 Md. 142, 146, 122 A.2d 489 (1956). The *Ipes* Court further described the historical significance of mandamus procedure:

> At common law the pleading and practice in mandamus proceedings were very tedious and technical. Upon the filing of a petition which set forth sufficient facts, the court directed the writ to issue. This writ commanded the re-

---

1. BE44 provides:

> In an action brought pursuant to this Subtitle, the plaintiff shall have the right to claim and prove his damages, if any, and the court, in entering judgment that the writ of mandamus shall issue, may also award such damages to the plaintiff as he shall have proven.

spondent to do the thing ordered, *or* to show cause, by a time certain, why he should not be required to do it. . . . [I]f the respondent wished to contest the matter, he either moved to quash the writ . . . or replied to it. *This reply was called a "return."* Upon the sufficiency of this *return,* the relator's right to the writ depended. In this *return,* the respondent was obliged to set forth with great care, . . . the facts upon which he relied to defeat the petition. . . . [I]f matters stated therein [the return] were not true, the only remedy of the petitioner was an action on the case for a false return. . . . However, even with this legislation, the technicalities of the common-law practice continued to embarrass the courts in administering relief by way of mandamus. Finally, the Legislature passed Chapter 285 of the Acts of 1858 (now Article 60 of the Code), by which the practice and procedure in all cases of mandamus were made uniform. Under this act, the old alternative writs and returns are abolished. . . .

. . . According to the present practice, the answer required by Article 60, Section 3 (and Rule 1240 b 2) stands in the place of the return to the alternative writ under former practice. . . .

224 Md. at 184–85, 167 A.2d 337 (citations omitted, footnote omitted). *See also Pennington v. Gilbert,* 148 Md. 649, 652, 129 A. 905 (1925) ("which reply was known as a return"); *Legg v. Mayor, Counsellor & Aldermen,* 42 Md. 203, 222 (1875); *Weber v. Zimmerman,* 23 Md. 45, 53 (1865).

It is clear, therefore, that the "false return" referred to in the common-law and by the commentators was the return of a respondent in a mandamus action when that return was alleged to be false. It was utilized when, in a later case, it was proven that a false return had caused the failure of a petitioner's action for mandamus. In the case *sub judice,* appellant prevailed.

The false return's modern day equivalent would be a false response of a respondent to a petition for a writ of mandamus. The present case is a mandamus action, not an action on the

case for a "false return." Even under present practice, there is no allegation that the response was false. Thus, even if, in Maryland, one seeking a writ of mandamus was entitled to his attorney's fees in a subsequent action on the case for a false return (and no Maryland court has so held), the case *sub judice* is not a subsequent action on the case. Moreover, appellant was not denied mandamus relief by reason of a false response to the petition. As we have said, the writ was issued. To the extent that the case at bar would encompass an action on the case for a false return, there were no allegations of a false response nor any evidence proffered of a false return or response. Even if a prevailing party in a mandamus action would be entitled to attorney's fees resulting from a false response (and we do not so hold), there is no evidence nor any allegation in the case at bar of a false response. The mere fact that a party prevails in an action for mandamus, *without* more, would not support the award of attorney's fees, even in a jurisdiction that would award such fees. Historically, an action on the case for a false return was available only to a party *who had not prevailed* because of the falseness of the return. As we perceive the cause of action, the fact that the false return caused a petitioner to be denied relief to which he was entitled was the central element of the action—it was the damage. A petitioner who prevailed did not incur the damage and the falseness of the return was of no relevance. There was no tort because there was no damage. Appellant in the case *sub judice* attempts to utilize this ancient procedure to create responsibility in appellee for appellant's attorney's fees that it incurred in pursuing its case, without any false response ever having been made by the Board. An action on the case for a false return has never encompassed such a theory.

Appellant states that its position is supported by the law in "numerous" jurisdictions. It then directs our attention to only four foreign cases in support of the imposition of attorney's fees in mandamus cases. We have discovered three others, although those cases are factually unique. Appellee, however, has furnished us with more persuasive cases from other

jurisdictions. With respect to foreign cases, we first note the three unusual cases we have discovered where such fees were awarded in mandamus actions.

The foreign cases that have approved the inclusion of attorney's fees in mandamus actions are, as we have indicated, factually inapposite to the case at bar. In *Hale v. Smith,* 271 Ind. 92, 390 N.E.2d 645 (1979), the county authorities who were responsible for funding a trial court's operations refused to provide for the salaries of a court reporter and bailiff that state law permitted the judge to hire and required the county to pay. The trial judge retained an attorney, presented the matter to the county council at a council hearing, and the county declined to pay the expenses. The trial court ultimately ordered the county to pay, an order on which the county requested a hearing. Another judge held a hearing and upheld the mandate, further ordering the county to pay the attorney's fees. The Supreme Court of Indiana noted that it had never been presented with "whether attorney's fees . . . of the court in a mandate action . . . are properly granted. In general there is no legal right to recover attorney fees in a mandate action." 390 N.E.2d at 648. The court nevertheless held:

> However, these cases [holding attorney's fees not recoverable] are . . . different from the case at bar. . . . The relief sought in both cases would inure to the personal benefit of the plaintiffs. In the case at bar Judge Smith issued the mandate in his official capacity . . ., but for the purpose of meeting the operational needs of the . . . Court. . . . In light of this, this . . . proceeding is . . . to be viewed . . . as a dispute between two arms of the county government . . . and the fees . . . should be paid by the county.

*Id. See also Levco v. Auditor of State,* 271 Ind. 415, 393 N.E.2d 749, 750–51 (1979) (an action for the traveling expenses of judge sitting in two different counties). Another instance of allowing counsel fees as damages in mandamus actions was the unusual case of *State ex rel. Pacific Bridge Co. v. Washington Toll Bridge Authority,* 8 Wash.2d 337, 112 P.2d 135 (1941), where, after construction of a bridge across Puget

Sound was completed, but before final payment was tendered, the bridge collapsed. The Authority's bonding company required that the Authority not make the final payment. The contractor successfully filed a petition for a writ of mandamus that included counsel fees as damages.

Contrary holdings include the case of *Wayne Township Bd. of Auditors v. Vogel,* 68 Ill.App.3d 714, 24 Ill.Dec. 887, 386 N.E.2d 91 (Ct.1979), where an auditor filed a petition for a writ of mandamus against Vogel, the Township's Supervisor of General Assistance, seeking that he produce records to which the auditor was entitled. Vogel was ordered to produce the records and pay the auditor's attorney's fees of $3,682, the mandamus statute's damages provision having been interpreted to be broad enough to include attorney's fees. The statute at issue, in relevant part, provided: "If judgment is given for the petitioner he shall recover his damages and costs, as a peremptory writ of mandamus shall be granted." *Id.* 24 Ill.Dec. at 890, 386 N.E.2d at 94. Quoting from a prior case, *People ex rel. Henderson v. Redfern,* 104 Ill.App.2d 132, 243 N.E.2d 252 (Ct.1968), the appellate court noted: "Consideration of ... attorneys' fees is permissible only where the statute specifically allows their assessment and we may not judicially enlarge the phrase 'costs of the prosecution' to include such expense." *Vogel,* 24 Ill.Dec. at 890–91, 386 N.E.2d at 94–95. It then held, at 891, 386 N.E.2d at 95:

In this connection it is to be observed, of course, contrary to the English system, that the idea of awarding attorney's fees to a successful litigant is not adopted in the United States except in rare instances and then by statutory provision.

We do not agree with the trial court's interpretation here of the meaning of the word "damages" so as to include attorney's fees. Had the legislature wished to include attorney's fees as an item of recovery to a successful litigant in a mandamus action it would have so stated and not done so imprecisely by an inference that the word "damages" would include attorney's fees. [Citation omitted.]

The renewal of a liquor license generated the mandamus petition in *Indiana Alcoholic Beverage Comm'n v. State*, 269 Ind. 48, 379 N.E.2d 140 (1978). The Indiana Supreme Court addressed the issue of what attorney's fees were assessable as costs under the Indiana mandamus statute. The court noted that "[w]e have granted transfer for the purpose of clarifying. the rule of damages applicable to actions in mandamus." 379 N.E.2d at 143. As it related to damages, the Indiana mandamus statute provided, in pertinent part:

[I]f the finding and judgments before the plaintiff, the court shall grant and adjudge to the plaintiff such relief, and such only, as he may be entitled to under the law ... *together with damages as in actions for false returns....*

*Id.* The Court opined:

The governing language, "together with damages as in actions for false returns" has persisted for a long time in our statutes relating to the mandate remedy, yet has never been fully considered by this Court as far as we have been apprised.

. . . .

... When the two statutory provisions ... are considered together ... it is apparent that the reference in the present statute ... to a "false return" identifies a false return made by a party in response to an alternative writ of mandamus. At common law an action on a false return to a writ of mandamus would only be commenced after the conclusion of the mandate proceeding. The purpose of the present statute ... was to permit the mandate action and the action on a false return to be tried in the same proceeding....

. . . .

At common law, trespass on the case was the proper remedy against an officer for making a false return.... If the moving party lost as a result of a return found sufficient and then discovered that the return was false ... such party could then institute a separate action at law and, ... recover damages.... The damages' recoverable were

those for injuries sustained ... and the expenses reasonably and necessarily incurred....

Turning back to our present mandate statute, we find that the alternative writ ... was abolished and *along with it the return to the writ.* Yet the legislative draftsman saw fit to retain the statement that damages are recoverable under the same terms and conditions as they were recoverable at common law in actions for false returns.... Accordingly, successful plaintiffs ... are entitled to recover damages ... flowing as a natural and probable consequence of the subjection to such trials.... [A]ttorney's fees are not part of these recoverable damages.

*Id.* at 143–44 (emphasis added). *See also Perry County Council v. State,* 157 Ind.App. 586, 301 N.E.2d 219 (1973); and *Fownes v. Hubbard Broadcasting, Inc.,* 310 Minn. 540, 246 N.W.2d 700 (1976), where the appellant contended that the Minnesota mandamus statute's inclusion of the word, "damages," encompassed attorney's fees. The Minnesota court noted that "[w]henever any party ... prosecutes an unmeritorious claim or defense, a 'normal and legitimate' consequence to the opposing party is the incurring of attorney's fees.... [M]andamus proceedings are not inherently distinguishable from other forms of civil actions on this basis." 246 N.W.2d at 704. It later stated that "[i]f the legislature believed that ... interests ... were so significant ..., it could have specifically provided for the award of attorney's fees...." *Id.*

In the case *sub judice,* as to the mandamus count, appellant prayed below:

C. That, under Rule [BE44] ... this Court issue a writ of mandamus, ordering the Board to award the contract to Hess.

There was no request made within the mandamus count or any proffer that attorney's fees be assessed in respect to a "false return" as, indeed, there could not be, as no return (response) had yet been made. The only reference to attorney's fees is found in a separate count applicable to all of the counts in the complaint:

E. That this Court award Hess the cost of this action, including reasonable attorney's fees.

As far as we have been able to discern, no claim for attorney's fees arising out of a "false return" (or false response) was ever made below. If it were necessary to determine whether a general damage claim in a mandamus action where a "false return" had been filed included the attorney's fees incurred in the mandamus action itself, we would be reluctant to so hold, we do not need, however, to address further that issue in this case—there is no allegation made of a false return or false response.

Accordingly, we hold that the provisions of Md.Rule BE44 do not authorize the assessment of attorney's fees incurred by a successful party in a mandamus action as damages or costs in such an action merely on the basis that the party against whom the attorney's fees are sought is the unsuccessful litigant.

### 2.

### Collateral Litigation Rule

The Court of Appeals discussed the collateral litigation rule in *McGaw v. Acker, Merrall and Condit Co.,* 111 Md. 153, 73 A. 731 (1909), a case cited by appellant. The Court said:

> The counsel fee and costs which the Court allowed the plaintiff to recover are not the counsel fees and costs involved in this litigation; but such only as were incurred in securing the new lease in its name. . . .
>
> The general rule is that costs and expenses . . . are not recoverable . . . even . . . in a subsequent action; but where the wrongful acts . . . has involved the plaintiff in litigation with others, or placed him in such relations with others as make it necessary to incur expense . . . such costs and expense should be treated as the legal consequences of the original wrongful act.

*Id.* at 160, 73 A. 731. Another example of the correct application of the collateral litigation rule was our recent case of *Montgomery Village Assocs. v. Mark,* 95 Md.App. 337, 620

A.2d 975, *cert. denied,* 330 Md. 680 (1993). There, Montgomery Village's wrongful failure to perform under a repurchase agreement caused Mark to incur attorney's fees and other costs in filing for bankruptcy and restoring his credit. In the separate specific performance action against Montgomery Village, we allowed the prior costs and fees saying, "generally such fees are not recoverable 'ancillary monetary damages' in a specific performance suit. An exception ... exists ... 'where the wrongful acts ... [have] involved the plaintiff in litigation with others....'" *Id.* 95 Md.App. at 344, 620 A.2d 975. Another exception to the general rule is presented in *Cohen v. American Home Assurance Co.,* 255 Md. 334, 258 A.2d 225 (1969) (wrongful failure to defend insurance claims).

We note the invocation of the collateral litigation rule in our case of *Laubach v. Franklin Square Hosp.,* 79 Md.App. 203, 556 A.2d 682 (1989), *aff'd,* 318 Md. 615, 569 A.2d 693 (1990), not cited by either of the parties, where we indicated the importance of "separate" litigation. In that case, a state statute provided that, if a hospital, under certain circumstances, refused to disclose certain records, it was liable for punitive damages. *Laubach* predated *St. Luke, supra,* and, thus, may well now be subsumed into that decision allowing attorney fees in punitive damage cases. In any event, the hospital in *Laubach* improperly refused to disclose the records in a separate and different case, *i.e.,* for medical malpractice. While the medical malpractice case was pending and after production of the records was refused, Laubach brought a separate action for fraud and violation of a statute. The Court noted the statutory basis for the action and stated that "where such costs are incurred directly as a result of the intentional conduct of the violator, they constitute actual damages arising out of the violation of the statute." *Id.* at 219, 556 A.2d 682. The court, however, then noted that its position was buttressed by the fact that "the litigation costs *were incurred in a prior, and separate, action.*" *Id.* at 220, 556 A.2d 682 (emphasis added).

The Court of Appeals held in *Freedman v. Seidler,* 233 Md. 39, 47, 194 A.2d 778 (1963):

Nor should the lower court have allowed counsel fees as a part of the damages. The general rule is that costs and expenses other than the usual and ordinary court costs are not recoverable in an action for damages, and, in the absence of special circumstances or statutory requirement, counsel fees are not a proper element of damages in an action for breach of contract.

The Court then considered *McGaw v. Acker, Merrall & Condit Co., supra,* relied on extensively by appellant in the case *sub judice,* in making a distinction in *Freedman* that is equally present in the case at bar:

The record ... does not disclose such special circumstances as are required to justify the allowance of a fee for legal services, and, in this respect the present case is clearly distinguishable from *McGaw.* There the fee allowed was for legal services in a *separate* litigation against another party which the wrongful act of the defendant had required. Here, the fee allowed was for legal services rendered in this litigation.... Nor did the ... joinder of the offending tenant as a third party create such special circumstances as would justify the award of counsel fees.

*Freedman,* 233 Md. at 47–48, 194 A.2d 778 (emphasis added). As we shall discuss later, it is equally clear to us that the presence of an intervenor is no more indicative of separate litigation than is the joinder or impleading of a third party defendant such as occurred in *Freedman. See also Kromm v. Kromm,* 31 Md.App. 635, 358 A.2d 247 (1976). In *Empire Realty Co. v. Fleisher,* 269 Md. 278, 286–87, 305 A.2d 144 (1973), the Court also distinguished *McGaw* as inapplicable:

This Court has upheld the award of legal fees in *separate* litigation against another party caused by the wrongful acts of the defendant.... Here, however, we are concerned with the question whether fees may be allowed for legal services rendered in the *instant* litigation.... Manifestly, there is no statutory authority to support the award made here.

Nor does the record in this case reflect such "special circumstances" as would justify the payment of legal fees....

The Fleishers apparently reason that fraud alone is sufficient to establish "special circumstances." We have found no prior decision ... which has considered the allowance of attorney's fees for the prosecution of an action grounded on fraud. In a variety of other cases, however, it has been held that counsel fees are not a proper element of damages. [The footnote cited various cases of breach of contract, vacation of a wrongful attachment, evidence, title examinations, will contests; proving the dissolution of an injunction.] [Citations omitted, some emphasis added, footnote omitted.]

Another early reference to the "collateral litigation" rule occurred in *Harry's Thrifty Tavern, Inc. v. Pitarra*, 224 Md. 56, 166 A.2d 908 (1961), where it was found not to apply. Referring to an earlier case, the Court noted:

On the second point, it is the general rule that costs and expense of litigation, other than the usual and ordinary court costs, are not recoverable in an action for damages. 1 Sedgwick, *Damages* §§ 229, 232 (9th ed.). The general rule was recognized in *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 160 [73 A. 731], but it was there held that the expense of an attorney's fee was recoverable where the wrongful act of the defendant forced the plaintiff to engage in litigation with others. The exception has been recognized in other cases. See Note, 45 A.L.R.2d 1183, and McCormick, *Damages*, § 68. But in the absence of special circumstances, attorney's fees are not a proper element of damages in a suit for breach of contract. See *id.* § 61; *Blum v. William Goldman Theatres*, 164 F.2d 192, 198 (3d Cir.), and 48 Col.L.Rev. 640; Comments, 34 Tul.L.Rev. 146. We find no such special circumstances in the instant case.

*Id.* at 63, 166 A.2d 908.

In *Taylor v. Wahby*, 271 Md. 101, 114, 314 A.2d 100 (1974), a case involving a claim for a realtor's commission, the Court of Appeals held that the trial court's addition of attorney's fees

and other litigation expenses on to the judgment was "in error." The Court noted that *Empire Realty Co. v. Fleisher, supra,* was on point. *Empire Realty,* which we have discussed above, was a case for the setting aside of a deed procured by fraud in which the Court refused to allow attorney's fees in spite of the fact that the suit was occasioned by the wrongful fraudulent act of the defendant. The Court, in *Archway Motors, Inc. v. Herman,* 41 Md.App. 40, 44, 394 A.2d 1228 (1978), opined:

> [W]e decline to adopt the proposition that counsel fees are proper ancillary monetary damages in a specific performance suit.
>
> However, there is another basis on which counsel fees might possibly be awarded, and that is the well recognized "collateral litigation" exception....
>
> ....
>
> ... [I]n *Kromm, supra,* we stated that "[t]he allowance [of counsel fees in *McGaw*] was grounded on the fact that the wrong there complained of had imposed a *necessary obligation* upon the plaintiff to institute the collateral action in order *to protect his interest in and to regain possession of property.*" 31 Md.App. at 639, 358 A.2d 247.
>
> *McGaw, supra,* makes it clear that a claimant seeking counsel fees may prevail only when the wrongful acts of one of the parties to a contract has involved the claimant in litigation *with others* ....

In the case *sub judice,* the wrong alleged generated no action involving others. The intervention of a party whose position may be adversely affected by the resolution of the issues in the instant case does not comprise a separate action nor does it make the intervenor an "other" litigant. The intervenor is one of *the* litigants in the case *sub judice.* " 'By the very definition of intervention' the intervenor is a party to the action. After intervention he is as much a party to the action as the original parties...." *Maryland Auto. Ins. Fund v. Soffas,* 89 Md.App. 663, 672, 599 A.2d 837 (1991) (quoting from *Montgomery County v. Supervisor of Assess-*

*ments,* 275 Md. 58, 63, 337 A.2d 679 (1975)). "Because only a party may assert rights in the case, this requirement supports our interpretation that an intervenor immediately becomes a party." *Soffas,* 89 Md.App. at 673, 599 A.2d 837. Thus, because the litigation that is the subject of the present litigation is not separate, and because the intervenor, Columbia, was, upon its entrance into the litigation, a party, it was not an "other" as contemplated by the "collateral litigation" rule.

The facts in the case *sub judice* fail to comport with the essential requirements of the collateral litigation rule. It does not apply here.

## Conclusion

The Court of Appeals noted in *Talley v. Talley,* 317 Md. 428, 438, 564 A.2d 777 (1989), that "[t]he power to award attorney's fees, being contrary to the established practice in this country, may be expressly conferred but will not be presumed from general language."

The general rule was also referred to in our case of *Solko v. State Rds. Comm'n,* 82 Md.App. 137, 152, 570 A.2d 373, *cert. denied,* 320 Md. 222, 577 A.2d 50 (1990). *Solko* was a condemnation case in which one of the issues before us was whether *Solko* was entitled to compensation for litigation expenses, including attorney's fees. The statute therein at issue provided that a landowner had to be put

in as good a pecuniary position as if no taking had occurred.

*Id.* Solko argued that such language required "an award of attorney's fees and litigation expenses." *Id.* We initially noted that, in eminent domain cases, the *legislative* trend in some jurisdictions had been to recognize attorney's fees as a "compensable cost of litigation." We nevertheless concluded that "the General Assembly of Maryland, however, has not joined the trend" and therefore we, "like the vast majority of other state courts, ... await a legislative mandate to include attorney's fees as a compensable cost." *Id.* at 153–54, 570 A.2d 373.

In the consumers protection and warranty case of *Boatel Industries, Inc. v. Hester,* 77 Md.App. 284, 550 A.2d 389 (1988), the late Judge Pollitt, for the Court, addressed the issue of a claim for attorney's fees. He noted that, "[a]s a general rule, legal fees incurred by the successful party are not recoverable. We see nothing in this case justifying an exception...." *Id.* at 310, 550 A.2d 389. *See also City of New Carrollton v. Belsinger Signs, Inc.,* 266 Md. 229, 238, 292 A.2d 648 (1972) (no counsel fees allowed under Declaratory Judgment Act); the attachment case of *Rhodes Hardwood Flooring Co. v. Blue Ridge Flooring Co.,* 225 Md. 158, 166, 169 A.2d 399 (1961); *Rice v. Biltmore Apts. Co.,* 141 Md. 507, 516–17, 119 A. 364 (1922); *Archway Motors, Inc. v. Herman,* 41 Md.App. 40, 394 A.2d 1228 (1978); *Burdette v. LaScola,* 40 Md.App. 720, 735–36, 395 A.2d 169 (1978); *Colonial Carpets, Inc. v. Carpet Fair, Inc.,* 36 Md.App. 583, 590, 374 A.2d 419 (1977); *Hess v. Chalmers,* 33 Md.App. 541, 544, 365 A.2d 294 (1976); *Certain–Teed Prods. Corp. v. Goslee Roofing & Sheet Metal, Inc.,* 26 Md.App. 452, 480, 339 A.2d 302 (1975). *See also* the extensive listing in our quote from *St. Lukes, supra.*

We, likewise, hold that any erosion in the viability of the American Rule's applicability in our jurisdiction must come, if at all, from either the Court of Appeals or the Legislature.

■ We hold that attorney's fees may not be assessed as damages in a mandamus case, absent the functional equivalent of a claim for trespass on the case for a false return to a mandamus petition, being filed or sufficiently asserted by amendment, or otherwise, subsequent to a defendant's response to the petition for mandamus. While it is doubtful that if such a claim were properly made we would hold that attorney's fees could be assessed as mandamus damages, we leave that final issue for resolution in a future case where the functional equivalent of an action on the case for a *false* return or response is sufficiently presented below. We hold, additionally, for the reasons previously stated, that the collateral litigation rule does not apply in the case *sub judice.*

We note in conclusion that we have perceived no significant trend in the Maryland legislature or in the Maryland Courts for any weakening of the "American Rule," *i.e.*, that the parties shall pay their own attorney's fees, except to the extent the *St. Lukes* majority has, as Judge Rodowsky stated in his dissent, "adopted [a] rule of fee shifting...." Even then the *St. Lukes* majority limited its decision to punitive damage issues.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**